UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMC CORPORATION, | ) | |
| | ) | |
| Plaintiff and Defendant-in-Counterclaim, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-12789-JGD |
| PURE STORAGE, INC. | ) | |
| | ) | |
| Defendant and Plaintiff-in-Counterclaim. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON PURE STORAGE'S MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIM

September 3, 2015

DEIN, U.S.M.J.

### I.  INTRODUCTION

This complex and hard fought litigation involves a dispute between two competitors in the data storage industry.  The plaintiff, EMC Corporation ("EMC"), alleges that the defendant, Pure Storage, Inc., ("Pure Storage"), engaged in a deliberate, nationwide scheme to lure away EMC's most talented and knowledgeable employees, and induce them to divulge EMC's confidential and trade secret information, for the purpose of soliciting business from EMC's customers and selling competing products.  On November 4, 2013, EMC filed a complaint against Pure Storage in which it asserted seven separate causes of action, including claims for misappropriation of confidential information and trade secrets, tortious interference with contractual and advantageous business relationships, aiding and abetting the misappropriation of trade secrets, unjust enrichment, and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A").

Pure Storage denies any liability to the plaintiff, and contends that EMC's claims are nothing more than a veiled attempt to maintain an unfair stranglehold on the data storage market by interfering with the success of Pure Storage's superior Flash Array technology, distracting and harassing the defendant's employees, and disrupting Pure Storage's customer relationships.  In addition, Pure Storage accuses EMC of misappropriating its confidential and trade secret information, and engaging in a variety of unlawful and unscrupulous business practices.  On November 26, 2013, Pure Storage asserted ten separate counterclaims against EMC, which included claims for misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, inducing breach of contract, intentional interference with contractual relations, intentional interference with prospective economic/business relations, conversion, unfair business practices and unfair competition in violation of the California Business and Professions Code §§ 17200 et seq., declaratory judgment, and violation of Chapter 93A.  Approximately one year later, in November 2014, Pure Storage amended its counterclaims in order to add claims for commercial disparagement, defamation, and violations of the Lanham Act, thereby bringing the number of its counterclaims to thirteen.

Fact discovery, which has been substantial and ongoing for more than a year and a half, is scheduled to be completed next month, and expert discovery is scheduled to be completed in early February 2016.  In addition, the parties have agreed to file any motions for summary judgment by February 26, 2016, and this court has set a trial date of October 17, 2016.  Thus, under the present schedule, this court expects to resolve the case in its entirety by the late fall of 2016, approximately three years after it was commenced.

The matter is presently before the court on "Defendant and Plaintiff-In-Counterclaim Pure Storage Inc.'s Motion for Leave to Amend Its Counterclaims" (Docket No. 160), by which Pure Storage is seeking leave to amend its counterclaims for a second time in order to assert an additional claim against EMC under sections 17043 and 17044 of the California Unfair Practices Act ("UPA").  Those provisions are directed at maintaining fair and honest competition between competitors in the business arena by prohibiting the use of "loss leaders" and other below-cost sales undertaken for the purpose of injuring competitors and destroying competition.  Pure Storage contends that during the course of discovery in this case, it uncovered evidence showing that EMC engaged in the prohibited conduct by selling products and services below cost, using loss leaders, and giving away products for the purpose of injuring the defendant and stifling competition.  It further contends that the interests of justice and judicial economy would best be served by allowing it to pursue a UPA claim in the context of the present litigation, and that EMC will suffer no undue prejudice by the addition of such a claim.  Thus, while there is no dispute that the present motion was filed nearly eight months after the deadline to amend the pleadings had expired, and after considerable discovery had already taken place, Pure Storage maintains that it has shown good cause to amend its counterclaims at this point in the proceedings.  Not surprisingly, not only does EMC deny the merits of these claims, but it asserts that the proposed amendment would add complex legal and factual issues, greatly expand the scope of discovery, and delay the case.

Even if Pure Storage had good cause for not filing its present motion sooner, this court finds that the proposed amendment would further complicate and delay the litigation, increase the burdens on the court, and cause prejudice to the plaintiff.  In particular, this court finds that

Pure Storage's efforts to introduce new theories of liability at this late stage in the discovery process would prevent the timely completion of fact and expert witness discovery, increase costs, and delay the ultimate resolution of the existing claims on the merits. Therefore, and for all of the reasons detailed below, the defendant's motion for leave to amend its counterclaims is DENIED.

## II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

The plaintiff, EMC, commenced this action on November 4, 2013.  (Docket No. 1).  By its Complaint, EMC is seeking judgment against Pure Storage on each of seven claims, as well as money damages and injunctive relief.  (<u>Id.</u>).  On November 26, 2013, Pure Storage filed an Answer and Counterclaims.  (Docket No. 14).  Therein, the defendant asserted ten counterclaims against the plaintiff, based largely on EMC's allegedly improper acquisition and testing of Pure Storage's Flash Array product, as well as its alleged use of the defendant's confidential and proprietary information to develop a competing product.  (<u>See</u> <u>id.</u> at Counterclaims ¶¶ 1-4, 7).   However, it did not assert any predatory pricing claims under the UPA or allege any facts relating to EMC's pricing practices.

## Establishment of a Pretrial Schedule

On January 14, 2014, this court adopted the parties' jointly proposed schedule for the completion of pretrial discovery and the filing of all dispositive motions, and issued a

---

[1] The facts set forth herein are derived from the pleadings and orders contained in the docket, as well as from: (1) the exhibits attached to the Declaration of Adam Gershenson in Support of Defendant and Plaintiff-in-Counterclaim Pure Storage Inc.'s Motion for Leave to Amend Counterclaims (Docket No. 163) ("Def. Ex. __); and (2) the Declaration of Anita M. Spieth in Support of EMC's Oppositions to Pure's Motions to Amend and Compel (Docket No. 171) ("Spieth Decl.") and the exhibits attached thereto ("Pl. Ex. __").

Scheduling Order setting forth the applicable deadlines.  (Docket No. 26).  Pursuant to the

Scheduling Order, the parties were required to file any amendments to the pleadings by

November 3, 2014, to complete all fact discovery by March 13, 2015, to complete expert

discovery by June 19, 2015, and to file any dispositive motions, including any motions for

summary judgment, by July 17, 2015.  (Id.).  Initially, therefore, this court contemplated that all

discovery, including all fact and expert discovery, would be concluded by late June 2015.

The case proceeded in the ordinary course, with the parties engaging in extensive fact

discovery and raising unresolved discovery disputes with the court.  (See, e.g., Pl. Exs. 12 and

13; Docket Nos. 35, 44, 68).  On November 3, 2014, the final date for filing proposed

amendments to the pleadings, Pure Storage filed a motion for leave to amend it counterclaims

in order to add claims against EMC for commercial disparagement, defamation and violations of

the Lanham Act.  (Docket No. 83 at 1).  In support of its motion, Pure Storage explained that its

newly proposed claims were closely related to its original claims, that the amended claims

would not materially alter the scope or trajectory of the litigation, and that EMC would not be

prejudiced by the amendment because the newly alleged facts were similar to the facts

underlying Pure Storage's original claims and key documents were readily accessible or had

already been produced.  (Id. at 2-3).  In light of the defendant's representations that its

proposed claims would not create any significant new discovery burdens, EMC did not oppose

the motion.  (Docket No. 84).  On November 17, 2014, this court granted Pure Storage's motion

to amend, thereby bringing the total number of counterclaims to thirteen.  (See Docket Nos. 85,

86).  Again, Pure Storage did not assert any predatory pricing claims under the UPA, and did not

allege any facts regarding EMC's pricing practices.  (See Docket No. 86).

According to Pure Storage, it had no ability to raise its UPA claim prior to the expiration of the November 3, 2014 deadline because evidence that EMC had engaged in below-cost pricing did not emerge until December 12, 2014, during the deposition of EMC's Divisional Vice President, David Boyle.  (Def. Mem. (Docket No. 166) at 5).  At that time, Mr. Boyle testified that EMC would "invest" in certain customers by selling product below cost.  (Def. Ex. 7 at 256).  However, he was unable to say whether he had ever approved below-cost pricing for the specific purpose of competing with Pure Storage.  (Id. at 254).  The defendant argues that it was only able to obtain sufficient evidence of EMC's alleged predatory pricing practices to support its proposed UPA claims after EMC produced documents that revealed such practices.  (See Def. Mem. at 3-4).  It further claims that EMC did not produce such documents until late March 2015.  (Id. at 3 n.3).

EMC disputes Pure Storage's argument that it could not have raised its UPA claims prior to the deadline for amending its counterclaims.  In particular, EMC insists that the defendant was in possession of relevant evidence as early as August 20, 2014, more than two months before Pure Storage filed its first motion to amend its counterclaims.  (Pl. Opp. Mem. (Docket No. 170) at 17).  Accordingly, it argues that Pure Storage failed to act diligently to assert its UPA claim within the time set forth in the applicable Scheduling Order, and that it has no good cause for seeking to amend its counterclaims now.  (Id. at 16-17).  As described below, this dispute does not need to be resolved because even if Pure Storage can demonstrate good cause for not seeking to add its UPA claims earlier, this court finds that its motion to amend still must be denied.

**Extensions to the Scheduling Deadlines**

On January 28, 2015, the parties filed a Joint Motion for an extension of time to complete fact discovery, and to amend the existing Scheduling Order.  (Docket No. 88).  In connection with their motion, the parties emphasized the complexity of the case and the voluminous nature of the discovery being sought.  (Id. at 2-4).  For example, the parties explained that they had served hundreds of written discovery requests, agreed to search for responsive documents from the files of "scores of custodians[,]" reviewed and produced over 100,000 documents, and were working collaboratively to schedule and complete the depositions of over 30 witnesses.  (Id. at 3-4).  They also described the extensive scope of the work required to comply with their discovery obligations and to resolve discovery disputes with minimal intervention by the court.  (Id. at 3-6).  On January 29, 2015, this court allowed in part and denied in part the parties' joint motion, and issued an Order amending the pretrial scheduling deadlines.  (Docket Nos. 89-90).  Specifically, this court ordered the parties to complete all fact discovery by July 30, 2015, to complete all expert witness discovery by November 20, 2015, and to file any dispositive motions, including any motions for summary judgment, by December 11, 2015.  (Docket No. 90).

The parties continued to engage in discovery throughout the first half of 2015.  During that time, Pure Storage repeatedly sought evidence relating to EMC's pricing practices.  For example, but without limitation, Pure Storage sought documents and information relating to EMC's use of "price discounts, rebates, givebacks, giveaways, waivers, offsets or the like[,]" as well as documents relating to EMC's "use of Loss Leaders or Below-Cost Sales of EMC's data storage products or services[.]" (Def. Ex. 10 at Request Nos. 118, 133; see also Def. Ex. 12 at Int.

No. 13).  It also requested that EMC designate a witness, pursuant to Fed. R. Civ. P. 30(b)(6), to

provide testimony concerning the plaintiff's "pricing in its data storage divisions, including: (a)

Any sales or attempted sales at less-than-cost, including sales of service, maintenance or other

EMC products; (b) The purpose of any such sales or attempted sales; and (c) The actual or

potential harm, damage or injury to Pure Storage caused by such sales or attempted sales."

(Def. Ex. 11).  However, EMC consistently objected to such requests on the grounds that they

were not relevant to the issues in the case.  (Spieth Decl. ¶ 9; Def. Ex. 15 at Resp. Nos. 118, 120,

131-33, 141, 154, 163).  Thus, the plaintiff maintained that "[t]here is no claim for predatory

pricing in this case, and therefore, any information related to 'use of Loss Leaders or Below-

Cost Sales' is not relevant to the case and will not be produced."  (Def. Ex. 15 at Resp. No. 133).

On June 15, 2015, during a hearing on Pure Storage's motion to compel, EMC informed

this court that it would require an extension of time to complete the remaining fact discovery

that had been identified by the parties.  (Docket No. 152 at 4).  The court agreed that the

existing deadline would need to be extended in order to accommodate the outstanding

discovery.  (Id. at 23).  Accordingly, it directed the parties to file a joint proposed schedule that

would be based on a trial beginning no later than September 2016, and include a deadline for

the filing of all summary judgment papers, including all oppositions and reply memoranda, by

early March 2016.  (Id. at 22-23).  However, it warned the parties against any efforts to add any

further discovery.  (Id. at 23-24).

The parties submitted a proposed schedule on June 26, 2015.  (Docket No. 155).  The

proposal included a deadline of October 16, 2015 for the close of fact discovery, a deadline of

February 5, 2016 for the close of expert discovery, a deadline of February 26, 2016 for the filing

of any motions for summary judgment, and a deadline of March 31, 2016 for the filing of any replies in support of motions for summary judgment.  (Id. at 2).  In addition, the parties proposed that the trial begin on September 19, 2016.  (Id.).  This court subsequently adopted the parties' proposed deadlines, except that it set October 17, 2016 as the date for the start of trial.  (Docket Nos. 167, 182).

## Filing of the Present Motion

On June 29, 2015, three days after the parties filed their proposed schedule for the completion of the case through trial, Pure Storage filed the instant motion for leave to amend its counterclaims in order to allege that EMC had engaged in a below-cost, predatory pricing scheme in violation of sections 17043 and 17044 of the UPA.  In connection with its motion, Pure Storage argues that the proposed amendment is supported by evidence that it uncovered during discovery, that judicial economy favors resolving all of its claims against EMC in a single lawsuit, that EMC will suffer no undue prejudice because discovery remains open and EMC has ample time to defend the proposed new claims, and that its proposed amendment is not futile because it alleges a viable claim for relief.  (Def. Mem. at 8-9, 12-15).  In addition, Pure Storage insists that it "is not moving to alter the schedule, serve more Requests for Production, or increase the number of deposition hours allotted to each side[,]" but "asks only for the opportunity to address its injuries in the same forum where it has been forced to defend itself against EMC's claims regarding competition in the data storage marketplace."  (Id. at 12 (emphasis omitted)).  Because this court finds that the proposed amendment would further complicate an already complex and burdensome litigation, and would threaten to derail this

court's efforts to resolve the parties' dispute in a timely manner, the defendant's motion to amend its counterclaims must be denied.

### III.  ANALYSIS

#### A.    Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it[.]"  Fed. R. Civ. P. 15(a)(1).  Thereafter, a party must obtain leave of court or the consent of the opposing party. See Fed. R. Civ. P. 15(a)(2).  The decision whether to grant a motion for leave to amend falls within the trial court's discretion.  Sheehan v. City of Gloucester, 321 F.3d 21, 26 (1st Cir. 2003).

Under the liberal amendment policy underlying Rule 15, leave to amend "is freely given when justice so requires absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive."  Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005) (quotations and citations omitted).  As both of the parties recognize, however, where, as in this case, the court has issued a scheduling order establishing pretrial deadlines pursuant to Fed. R. Civ. P. 16(b), "[t]hose deadlines may be modified 'only for good cause and with the judge's consent.'"  Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (quoting Fed. R. Civ. P. 16(b)(4)).  As a result, "'Rule 16(b)'s good cause standard, rather than Rule 15(a)'s freely give[n] standard, governs motions to amend filed after scheduling order deadlines' have passed."  Id. (quoting Flores-Silva v. McClintock-Hernandez, 710 F.3d 1, 3 (1st Cir. 2013)) (additional quotations omitted).  This standard focuses mainly "on the diligence (or lack thereof) of the moving party[.]"  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).

"Regardless of the context, the longer [the moving party] delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Id. Moreover, the First Circuit has emphasized that motions to amend are especially disfavored where their "timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . . .'" Id. (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)). The question "whether undue delay is sufficiently prejudicial to the opposing party to warrant a denial of leave to amend" must be answered based on the particular facts of the case. Weber v. Sanborn, 526 F. Supp. 2d 135, 142 (D. Mass. 2007). This court finds, based on the particular facts of this case, that the defendant's motion should be denied.

B.     **Application to the Present Case**

**Existence of "Good Cause"**

As described above, the parties dispute whether Pure Storage has demonstrated good cause for filing its motion to amend so late in the litigation. The defendant contends that it was unaware of facts supporting its proposed claims prior to the deadline for the parties to amend their pleadings, and was only able to learn of such facts during the course of subsequent discovery. (Def. Mem. at 3-5). It also contends that once evidence of EMC's alleged pricing practices came to light, it worked diligently to uncover facts that would support a claim for relief. (Id. at 5-6, 11). According to Pure Storage, however, its ability to gather evidence was delayed by EMC's refusal to produce discovery regarding its use of below-cost sales. (Id. at 7).

Consequently, it was unable to file its motion to amend earlier.  (See id. at 5-7).  EMC disputes

the defendant's assertions, and argues that Pure Storage had knowledge of the facts upon

which it bases its UPA claims even before the expiration of the November 3, 2014 deadline for

amending the pleadings.  (Pl. Opp. Mem. at 11, 17).  As a result, EMC contends that there is no

good cause for the defendant's failure to comply with the court's Scheduling Order, and no

justification for the delay in filing its motion to amend.  (Id. at 10-11, 16-17).

       This court finds that there is no need to resolve this dispute because the defendant's

effort to introduce an entirely new claim at this point in the discovery process is not appro-

priate in any event.  As described above, this court only agreed to extend the July 30, 2015

deadline for the completion of fact discovery to October 16, 2015 so that the parties could

complete the discovery that had already been identified.  If this court were to allow the

pending motion, it would cause further delays in what has already been a lengthy pretrial

schedule, as well as associated costs and, in all likelihood, additional discovery disputes.

Moreover, the introduction of a new theory of liability, in a case that already consists of 20

separate causes of action, would further complicate the issues that are likely to arise on

summary judgment, and disrupt the timely resolution of the existing claims on the merits.

Therefore, even if this court accepts Pure Storage's position that it acted with diligence to

uncover evidence of EMC's alleged predatory pricing practices, and had good cause for the

delay in filing its motion to amend, the motion would still be denied.

## EMC's Need for Additional Discovery

       Pure Storage's insistence that its proposed claims are straightforward, and that no delay

will arise as a result of such claims, is entirely unconvincing.  In order to prove a violation of

section 17043 of the UPA, "a plaintiff must . . . prove two elements: (1) below-cost sales

undertaken for the purpose of injuring competitors or destroying competition that (2) have

resulted in a competitive injury." Bay Guardian Co. v. New Times Media LLC, 187 Cal. App. 4th

438, 454, 114 Cal. Rptr. 3d 392, 403 (2010).  In order to establish a violation of section 17044, a

plaintiff must show that the opposing party sold a product for "less than cost . . . [w]here the

effect [was] to divert trade from or otherwise injure competitors."  Cal. Bus. & Prof. Code §§

17030, 17044.  "The UPA provides definitions for 'cost' in various settings (e.g., production and

distribution)", and "[a] number of UPA provisions specify what sort of evidence may be used to

demonstrate cost" under the statute.  Pan Asia Venture Capital Corp. v. Hearst Corp., 74 Cal.

App. 4th 424, 432, 88 Cal. Rptr. 2d 118 (1999).  Nevertheless, "the concept of cost" in this

context "can often prove deceptively hard to grasp in the real world." Id. at 435.  This court

finds that if Pure Storage's motion were allowed, EMC would need additional time to take

discovery regarding the issue of cost.

      For purposes of calculating "cost" under the statute, California uses a "fully allocated

cost standard, that is, a fair allocation of all fixed or variable costs associated with production of

the article or product."  Id. at 432 (footnote omitted).  This standard "has been equated with

average total cost, which 'reflects that portion of the firm's total costs – both fixed and variable

– attributable on an average basis to each unit of output.'"  Turnbull & Turnbull v. ARA Transp.,

Inc., 219 Cal. App. 3d 811, 820, 268 Cal. Rptr. 856 (1990) (quoting William Inglis & Sons Baking

Co. v. ITT Cont'l Baking Co., 668 F.2d 1014, 1035, n.30, 1048 (9th Cir. 1981)).  California courts

have recognized that "'there are many ways of fully allocating costs,'" and that "no single

formulation will ever be broad enough to encompass all possibilities." Pan Asia Venture Capital

Corp., 74 Cal. App. 4th at 435-36 (quoting Turnbull & Turnbill, 219 Cal. App. 3d at 822) (emphasis omitted).  Consequently, the question of cost is fact-specific, and must be determined "on a case-by-case basis."  Id. at 435.  "Moreover, a defendant is free to demonstrate to the trier of fact that its fully allocated cost, using another reasonable allocation method other than that used by the plaintiff, is actually lower than the plaintiff alleges and lower than defendant's sales or bid price."  Turnbull & Turnbill, 219 Cal. App. 3d at 822-23.  In the event Pure Storage were to amend its counterclaims, EMC would need to engage in discovery and develop evidence aimed at establishing the cost of its products and services.

According to EMC, "[i]nformation that might be relevant to the determin[ation] of 'cost' associated with each product [at issue in this case] is not available from a single EMC source." (Spieth Decl. ¶ 10).  Consequently, EMC would need to perform a significant amount of work "[i]n order to identify information relevant to the calculation of 'cost'" under the UPA.  (Id.).  It would also need to retain one or more experts to assist it in developing an approach to calculating its costs and presenting such evidence at trial.  (Pl. Opp. Mem. at 14).  Relevant authority indicates that experts in the field "argue passionately over the many possible models and approaches" to fully allocating costs under California law.  Pan Asia Venture Capital Corp., 74 Cal. App. 4th at 435.  Therefore, the task of identifying appropriate experts, and completing the work required to prepare any expert witnesses reports, is likely to be far from simple.  Pure Storage's insistence that "EMC has more than ample time to defend this claim" within the time limits that have been set by this court (Def. Mem. at 13), is belied by the nature and complexity of the proposed amended claims.

In addition to discovery on cost, EMC would need to develop evidence regarding the issue of intent.  As described above, in order to prove a claim under section 17043, Pure Storage would have to establish that EMC engaged in below-cost sales "for the purpose of injuring competitors or destroying competition[.]"  Bay Guardian Co., 187 Cal. App. 4th at 454. Under section 17071 of the statutory scheme, "proof of one or more acts of selling or giving away any article or product below cost . . . together with proof of the injurious effect of such acts, is presumptive evidence of the purpose or intent to injure competitors or destroy competition."  Cal. Bus. & Prof. Code § 17071.  However, "[t]he presumption 'may be rebutted by establishing one of the statute's affirmative defenses, such as meeting competition or by showing that the sales 'were made in good faith and not for the purpose of injuring competitors or destroying competition.'"  Bay Guardian Co., 187 Cal. App. 4th at 465 (quoting Cal. Bus. & Prof. Code § 17050).  Accordingly, EMC would need to search for evidence and take discovery aimed at defending itself against any such presumption.  This too would require revisions to the existing pretrial deadlines, increase the costs of discovery, and cause substantial delays in resolving the present dispute.  Accordingly, this court concludes that an amendment would impose undue prejudice upon EMC.  See Steir, 383 F.3d at 12 ("That the motion to amend . . . if granted, would have prejudiced the [defendants] by injecting a new theory of relief into the litigation, goes without saying"); Weber, 526 F. Supp. 2d at 143 (denying motion to amend where "additional discovery would be necessary for [defendant] to fairly litigate" the proposed claim).

**EMC's Awareness of the Proposed Claim**

The defendant's assertion that its proposed claim under sections 17043 and 17044 of the UPA is not new, and would not cause undue prejudice to EMC, is without merit.  As an initial matter, Pure Storage's suggestion that the claim is already encompassed by its existing claim under section 17200 of the California Business & Professions Code lacks any support in the record.  As described in Pure Storage's Amended Counterclaims, its claim under section 17200 is based upon allegations concerning EMC's alleged improper acquisition and testing of Pure Storage's Flash-Array technology; EMC's alleged conduct in disparaging, defaming and publishing false statements about the defendant; EMC's alleged conduct in threatening entities that seek to do business with Pure Storage; and EMC's alleged efforts to prevent Pure Storage from- hiring current and former employees of EMC, and to threaten employees with litigation if they accept a job with the defendant.  (Docket No. 86 ¶¶ 172-75).  Significantly, there are no citations to sections 17043 or 17044 of the UPA, and there is no mention of EMC's allegedly predatory pricing practices anywhere in the Amended Counterclaims.  (See Docket No. 86). Therefore, the defendant's argument that its proposed claims are not new is undermined by its own allegations.  Moreover, as a matter of logic, Pure Storage would have no need to seek an amendment to add a claim under sections 17043 and 17044 if such a claim were already encompassed by the defendant's existing counterclaims.

This court is equally unpersuaded by Pure Storage's argument that EMC would suffer no undue prejudice from allowance of the amendment because it had "more than sufficient opportunities to obtain discovery into below cost pricing claims that were clearly at issue." (Def. Reply Mem. (Docket No. 180) at 5).  As described above, there is no question that the

proposed claims of below-cost pricing have never been part of Pure Storage's case against EMC, and that EMC objected and refused to produce discovery regarding its alleged predatory pricing practices. The notion that EMC should have devoted time and resources to defending itself against claims that have never been part of the case, based on the possibility that they could be added to the case at some future time, makes little sense. The fact that EMC was on notice of the potential claims does not eliminate the prejudice to the plaintiff if Pure Storage were to introduce its new claim now.

### Consideration of Judicial Economy and Efficiency

Finally, this court rejects the defendant's contention that the interests of judicial economy and efficiency would best be served by allowing its motion to amend. (See Def. Mem. at 12). As explained previously, the proposed amendment seeks to introduce an entirely new theory of liability to the case, which arises out of a different set of facts than those that support the existing claims. The proposed amendment, if allowed, would require significant additional discovery. This would not only prevent the parties from meeting the current deadlines and completing the litigation within the time established by this court, but it would also add further complexity to a substantial and complex case, and require this court to devote additional resources toward the management and resolution of the dispute. For this reason as well, Pure Storage's motion to amend its counterclaims in order to assert a claim under sections 17043 and 17044 of the UPA shall be denied.

## IV.  **CONCLUSION**

For all the reasons detailed above, the "Defendant and Plaintiff-in-Counterclaim Pure Storage Inc.'s Motion for Leave to Amend Its Counterclaims" (Docket No. 160) is hereby DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge