UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-12789-JGD |
| PURE STORAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON MOTION OF
## PURE STORAGE, INC. FOR PARTIAL SUMMARY JUDGMENT

August 19, 2016

DEIN, U.S.M.J.

### I.  INTRODUCTION

This matter is before the court on "Pure Storage's Motion for Partial Summary Judgment on EMC's Claims" (Docket No. 329).  By this motion, Pure Storage is seeking summary judgment on EMC's claims of common law misappropriation of confidential information and trade secrets (Count I) and misappropriation of trade secrets in violation of Mass. Gen. Laws ch. 93, §§ 42 and 42A (Count II).  Pure Storage has also moved for summary judgment on EMC's claim of violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count VII).  After fully considering all of the arguments raised by the parties in their written submissions and oral arguments, and for the reasons detailed herein, the motion is DENIED with respect to the trade secret claims (Counts I and II) but ALLOWED as to the 93A claim (Count VII).

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is on the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

[2]

In reviewing the evidence, the court must examine "the facts in the light most favorable to the non-moving party and draw[] all reasonable inferences in his favor[.]"  Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000).  "In the final analysis," the court must "determine if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Id. (quoting Anderson, 477 U.S. at 249, 106 S. Ct. at 2511).

## III.   CLAIM PURSUANT TO MASS. GEN. LAWS CH. 93A

This court turns first to Pure Storage's motion for summary judgment on Count VII of EMC's Complaint.  Mass. Gen. Laws ch. 93A provides in relevant part as follows:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of com-petition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.

Mass. Gen. Laws ch. 93A, § 11.  Pure Storage has moved for summary judgment on EMC's claim under ch. 93A on the grounds that the conduct about which EMC is complaining did not occur primarily and substantially within the Commonwealth of Massachusetts.  The burden of proof on this issue rests with Pure Storage.  Id. ("For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.").

As detailed more fully below, this court must engage in a "fact intensive" inquiry to determine "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  Kuwaiti Danish Comput. Corp. v. Digital Equip. Corp., 438 Mass. 459, 472-73, 781 N.E.2d 787, 798-99 (2003).  Even reading the record in the light most favorable to EMC, this court finds that while Pure Storage may have targeted a

Massachusetts corporation with the intent to cause substantial injury in Massachusetts, it did so without engaging in any significant wrongful conduct in Massachusetts.  Therefore, Pure Storage's motion for summary judgment as to the 93A claim must be allowed.

A.    **Statement of Facts[1]**

Unless otherwise indicated, the following facts are not in dispute.

EMC and Pure Storage are competitors in the data storage market.  EMC is a Massachusetts corporation with its headquarters in Hopkinton, Massachusetts.  All of EMC's executive team is based in Massachusetts, as is its technical training department.  EMC has offices nationwide.  Pure Storage is a Delaware corporation based in California.  (SF ¶ 111).  Pure Storage also has various offices throughout the country.  (See id. ¶¶ 116, 118).

By its Complaint, EMC alleges, *inter alia*, that Pure Storage engaged in a deliberate, nationwide scheme to lure away EMC's most talented and knowledgeable employees, and induce them to divulge EMC's confidential and trade secret information, for the purpose of soliciting business from EMC's customers and selling competing products.  The undisputed facts establish that EMC has significant contacts in Massachusetts and was injured in Massachusetts.  However, these facts also establish that despite the fact that the effects of its actions were felt here, Pure Storage's conduct did not take place in this Commonwealth.  The center of gravity of the allegedly wrongful conduct was not in Massachusetts.

---

[1]  References to "SF" are to Pure Storage's Statement of Undisputed Material Facts (Docket No. 340). References to "RF" are to EMC's Response to those Facts (Docket No. 359).

[4]

EMC alleges that, as part of its scheme, Pure Storage solicited EMC employees and caused them to breach their Key Employment Agreements ("KEA") with EMC.  (RF ¶ 114).  These KEAs were drafted in Massachusetts, and contained Massachusetts choice of law and forum selection clauses requiring that disputes be resolved in Massachusetts.  (Id.).  However, none of the former EMC employees worked out of a Massachusetts office.  (Id.).  Similarly, none of the Pure Storage personnel who allegedly engaged in the wrongful solicitation of employees worked in Massachusetts.  (SF ¶ 116).  EMC further alleges that Pure Storage wrongfully solicited EMC customers.  However, none of the 20 EMC customers who allegedly were wrongfully solicited were located in Massachusetts.  (Id. ¶ 119).  None of the Pure Storage employees who engaged in the solicitation of customers worked out of Massachusetts either.  (Id. ¶ 118).

To the extent that EMC employees are alleged to have taken confidential information with them, it appears that they took that information from their workplaces, which were not in Massachusetts.  The Pure Storage employees who allegedly made use of the confidential EMC information did not work out of Massachusetts.  (Id. ¶ 115).  There is no evidence in the record that Pure Storage communicated with any EMC personnel in Massachusetts, or otherwise engaged in any challenged conduct in the Commonwealth.

In support of its contention that 93A is applicable in the instant case, EMC points to its significant contacts in Massachusetts and the fact that it was harmed here.  For example, EMC argues that all of the former EMC employees had ultimately reported to Massachusetts executives while employed by the plaintiff, and that the standards and policies that the former

employees allegedly violated were set in Massachusetts.  (RF ¶ 114).  Although the employees

were not based in Massachusetts, they did attend trainings at the plaintiff's corporate head-

quarters in Massachusetts.  (Id.).  EMC contends that it learned of the alleged harm in Massa-

chusetts, and points to the fact that it sent dozens of cease and desist letters to Pure Storage

and its employees from Massachusetts.  (Id.).

EMC argues further that while its confidential information may not have been

misappropriated in Massachusetts, some of the confidential information had been prepared for

meetings in Boston, which at least one former EMC employee attended.  (Id.).  EMC also alleges

that some of the wrongfully misappropriated customer lists were assembled, at least in part,

based on information compiled in EMC's SalesForce database, which is managed out of EMC's

Hopkinton, Massachusetts office.  (Id.).

In sum, the crux of this complaint is that Pure Storage engaged in a concerted scheme to

cause serious harm to the business of a Massachusetts-based company.  It did so by allegedly

interfering with EMC's employees and customers, none of whom were based in Massachusetts,

and by misusing EMC's confidential information at Pure Storage's locations, which did not

include Massachusetts.  The issue then becomes whether this is enough to subject Pure Storage

to potential liability under Mass. Gen. Laws ch. 93A.

**B.** **Analysis**

Prior to the SJC's 2003 decision in Kuwaiti, in order to determine if allegedly unfair

conduct occurred "primarily and substantially" in Massachusetts, the First Circuit had "adopted

a three-prong balancing test that looks to (1) where the defendant commits the unfair or

[6]

deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and

(3) where the plaintiff sustained losses caused by the wrongful conduct." Kuwaiti, 438 Mass. at

472 n.13, 781 N.E.2d at 798 n.13.  While those factors still may be considered by the court, the

three-part test is no longer controlling.  Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.,

329 F.3d 216, 234-35 (1st Cir. 2003); RGJ Assocs. Inc. v. Stainsafe, Inc., 338 F. Supp. 2d 215, 233-

34 (D. Mass. 2004).  Rather, Kuwaiti requires the court to "determine whether the center of

gravity of the circumstances that give rise to the [93A, § 11] claim is primarily and substantially

within the Commonwealth." Kuwaiti, 438 Mass. at 473, 781 N.E.2d at 799.  "The determination

cannot be 'reduced to any precise formula' but rather requires a 'fact intensive and unique'

inquiry for each case." AECOM Tech. Servs. Inc. v. Mallinckrodt LLC, 117 F. Supp. 3d 98, 106 (D.

Mass. 2015) (quoting Kuwaiti, 438 Mass. at 472-73, 781 N.E.2d at 798).  Moreover, only the

allegedly unfair and deceptive conduct may be considered: "[c]ontacts with Massachusetts that

were neither unfair nor deceptive do not play a part in this assessment." Id. (internal quota-

tions omitted), and cases cited.  Thus, the alleged wrongdoer's conduct becomes the focus of

the inquiry. See Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt., LLC,  No. 10-10166-FDS,

2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013) (court finds 93A inapplicable despite harm to

Massachusetts company where "[v]irtually all of the allegedly unfair *conduct* . . . took place in

Connecticut." (emphasis in original)).

 "As many courts have previously held, a place of injury within Massachusetts is not a

sufficient basis for finding that conduct occurred 'primarily and substantially' within the

Commonwealth." Id. at *13, and cases cited.  Accord Skyhook Wireless, Inc. v. Google, Inc., 86

Mass. App. Ct. 611, 623, 19 N.E.3d 440, 449-50 (2014).  <u>See also</u> <u>Fishman Transducers, Inc. v.</u>
<u>Paul</u>, 684 F.3d 187, 197 (1st Cir. 2012) (fact that all the harm occurred in Massachusetts, where
plaintiff was based, was insufficient for 93A to apply).  Thus, it has long been recognized that "if
the place of injury were the only test, practically no case involving a Massachusetts plaintiff
would be exempt from c. 93A status, no matter how negligible the defendants' business activity
in this State.  Such a result would effectively nullify the words 'primarily and substantially within
the Commonwealth[.]'"  <u>Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.</u>, 25 Mass. App. Ct.
302, 309-10, 518 N.E.2d 519, 523 (1988).  Applying these principles to the instant case compels
the conclusion that Pure Storage has met its burden of proving that the "center of gravity" of
the challenged actions and transactions was not in Massachusetts.

      Here, there is no allegation that Pure Storage undertook any wrongful conduct in
Massachusetts.  It did not target or contact Massachusetts employees or customers.  There is
no evidence that Pure Storage sent information into Massachusetts or otherwise communi-
cated with Massachusetts-based personnel.  To the extent that EMC employees may have
traveled to Massachusetts where they obtained confidential information, there is no evidence
that such conduct was directed by Pure Storage.  Even if it were, such a connection to
Massachusetts is too minor to "change the center of gravity for [EMC's] Chapter 93A claims."
<u>AECOM Tech. Servs.</u>, 117 F. Supp. 3d at 107.  Similarly, the fact that EMC employees may have
been induced to breach corporate policies that were developed in Massachusetts does not aid
in this court's analysis, since the breaches themselves overwhelmingly occurred out-of-state.
<u>See</u> <u>Kuwaiti</u>, 438 Mass. at 470-75, 781 N.E.2d at 797-800 (finding defendant's corporate

headquarters in Massachusetts insufficient for 93A to apply, even though corporate policies were developed in Massachusetts, where defendant's out-of-state employees engaged in wrongful conduct).

As EMC argues, there are cases in which the court considers where the impact of the wrongful conduct was felt in determining the center of gravity for a 93A claim.  Even in such cases, however, the court must determine whether the defendant engaged in wrongful conduct in the Commonwealth.  For example, in Pavonix, Inc. v. Barclays Bank PLC, No. 13-10348-LTS, 2015 WL 9243831, at *11 (D. Mass. Nov. 25, 2015),[2] this court found that 93A applied because the alleged misrepresentations which formed the basis of the 93A claim "were received primarily in Massachusetts" and the impact of those misrepresentations were felt in the Commonwealth.  Similarly, in RGJ Assocs. Inc. v. Stainsafe, Inc., 338 F. Supp. 2d 215 (D. Mass. 2004), the court noted that it needed to identify the defendant's conduct that allegedly violated ch. 93A because "[c]ontacts with Massachusetts that were neither unfair nor deceptive do not play a part in assessing whether the misconduct occurred primarily and substantially in Massachusetts."  Id. at 234.  Moreover, in concluding that the alleged misconduct did occur primarily and substantially in Massachusetts, the court found not only that the plaintiff suffered losses in Massachusetts, but also that the defendant had sent a number of deceptive and mis-leading communications into Massachusetts, and that the product at the core of the contract at issue in the case had been manufactured exclusively in Massachusetts.  Id. at 236-237.  Finally,

---

[2] Report and Recommendation adopted by Pavonix, Inc. v. Barclays Bank PLC, 2015 WL 9239751 (D. Mass. Dec. 17, 2015).

in Sentinel Prods. Corp. v. Mobil Chem. Co., No. 98-11782-PBS, 2001 WL 92272 (D. Mass. Jan.

17, 2001) (decided pre-Kuwaiti), which involved the alleged wrongful copying of a patented

machine and misappropriation of trade secrets, among other claims, the court determined that

the alleged misconduct could be found to have occurred primarily and substantially in Massa-

chusetts not only because the Massachusetts-based plaintiff suffered losses in Massachusetts,

but also because the defendant had sent its employees into Massachusetts to inspect the

machine and to obtain specifications.  Id. at *24.  In addition, the plaintiff responded to the

defendant's misrepresentations in Massachusetts by drafting a purchase order in the

Commonwealth permitting the shipment of the patented machine out of Massachusetts.  Id.

Thus, none of these cases support the proposition that harm in Massachusetts alone is

sufficient to establish the Commonwealth as the center of gravity for a 93A claim.

In sum, in the instant case there is no evidence that Pure Storage engaged in wrongful

conduct in Massachusetts.  "As the SJC recognized in Kuwaiti Danish Computer Co., when

'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the

Commonwealth, there can be no Chapter 93A liability."  Kenda, 329 F.3d at 236 (quoting

Kuwaiti, 438 Mass. at 475, 781 N.E.2d at 800).  Pure Storage's motion for summary judgment as

to EMC's 93A claim (Count VII) is allowed.

## IV.  CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS

Pure Storage has moved for summary judgment on EMC's claims for misappropriation of

trade secrets (Counts I and II) on the grounds that EMC has failed to identify what it contends

are trade secrets with sufficient specificity, and it has failed to establish either that the "contact

lists" at issue qualify for trade secret protection or that Pure Storage ever used the contact

lists.[3]  Significantly, however, Pure Storage has not moved to strike any specific document as

not qualifying for trade secret protection.  This court finds that there are disputed facts which

preclude the entry of summary judgment in favor of Pure Storage on the misappropriation

claims, and the motion is denied.

### A.     Overview of Applicable Law

Under Massachusetts law, "a trade secret may consist of any formula, pattern, device or

compilation of information which is used in one's business, and which provides an opportunity

to obtain an advantage over competitors who do not know or use it.  The subject matter of a

trade secret must be secret.  Matters of public knowledge or of general knowledge in an

industry cannot be appropriated by one as his secret." Data Gen. Corp. v. Grumman Sys.

Support Corp., 825 F. Supp. 340, 359 (1993) (quoting J.T. Healy & Son, Inc. v. James A. Murphy

& Son, Inc., 357 Mass. 728, 736, 260 N.E.2d 723, 729 (1970)) (internal punctuation omitted).  In

order to prevail on a claim of misappropriation of trade secrets, the plaintiff is required to show

1) the existence of a trade secret; 2) that the plaintiff took reasonable steps to preserve the

secrecy of its trade secret; and 3) the defendant's use of improper means, in breach of a

―――――――――――――――――――

[3]  The parties disagree as to whether, under Massachusetts law, "confidential and proprietary business
information may be entitled to protection, even if such information cannot claim trade secret protect-
tion." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 8 (1st Cir. 2000) (acknowledging
uncertainty in the law) (quoting Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 691 N.E.2d 545,
547 (1998)).  See EMC Opp. (Docket No. 358) at 10 n.5; Pure Storage Reply Mem. (Docket No. 367) at 3
n.5.  That issue does not need to be resolved in the context of the instant motion since EMC contends
that the confidential materials taken by its former employees constitute trade secrets.  See EMC Opp. at
10 n.5.

confidential relationship, to acquire and use the trade secret.  Data Gen. Corp. v. Grumman Sys.

Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994), and cases cited, abrogated on other grounds

by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010).[4]  The

burden is on the party claiming trade secret status to identify the specific trade secrets at issue

"with clarity that can be understood by a lay person and distinguish what is protectable from

that which is not."  Sutra, Inc. v. Iceland Express, EHF, No. 04-11360-DPW, 2008 WL 2705580, at

*4 (D. Mass. July 10, 2008) (quotations, citation and punctuation omitted).  "In determining

what is an adequate description of a trade secret, courts have required specificity, although

that specificity is highly fact dependent."  Id., and cases cited.

   **B.    Analysis**

       In the instant case, it is undisputed that EMC has provided a detailed answer to

Interrogatory No. 1 which identifies, by Bates number, the documents it contends constitute

"misappropriated EMC trade secrets and/or Confidential Information," as well as, where

applicable, the employee who allegedly misappropriated the materials.  See Quigley Decl.

(Docket No. 350) at Ex. 1.  Pure Storage contends that some of this "confidential information"

does not rise to the level of trade secrets.  See Pure Storage Reply Mem. at 4-5.  However, it has

not moved for summary judgment as to specific documents.  Instead, it argues that since some

of these documents do not, in its view, constitute trade secret information, EMC's entire claim

_____

[4]  Mass. Gen. Laws ch. 93, §§ 42 and 42A basically represent a codification of the common law of trade
secrets, except that the statutes also provide for multiple damages and injunctive relief.  See Burten v.
Milton Bradley Co., 763 F.2d 461, 462 (1st Cir. 1985).

for misappropriation of trade secrets should be stricken.  Id.  This approach is not appropriate in the context of this case.

As an initial matter, this court notes that Pure Storage's Interrogatory No. 1 asks EMC to identify "the trade secret or other 'Confidential Information' you contend was misappropriated, misused, or improperly disclosed[.]"  Quigley Decl. at Ex. 1.  Therefore, the answer to this interrogatory cannot be viewed as being overly broad if it includes "confidential" information that does not, in Pure Storage's view, rise to the level of a trade secret.  See Motorola Inc. v. Lemko Corp., No. 08 C 5427, 2012 WL 74319, at *17 (N.D. Ill. Jan. 10, 2012) (plaintiff appropriately "lump[ed] trade secrets in with other proprietary and confidential information" when defendant's interrogatory requested identification of "trade secrets and/or confidential information").  Moreover, EMC has made it abundantly clear from its answer on which documents it is relying to support its misappropriation claims.  Since many of the documents are expressly labeled "EMC Confidential – Internal Use Only," EMC's contention that these documents should not have been provided to Pure Storage is not apparently frivolous.  See TouchPoint Sols., Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 29 (D. Mass. 2004) ("A trade secret need not have the novelty that is requisite for a patent, it must only confer a competitive advantage on its possessor").  If Pure Storage has objections to specific documents, then it can raise those objections in connection with pre-trial proceedings.  Despite extensive court involvement in discovery, Pure Storage has not previously sought further identification of which documents EMC contends contain trade secrets.  Its generalized request that this court should simply dismiss EMC's claims for lack of specificity at the summary judgment stage is without merit.

[13]

Pure Storage further argues that the 30 "customer lists" that were taken by former EMC employees do not constitute trade secrets. EMC has put forth sufficient facts to refute this claim, which will have to be decided by a jury. The documents at issue do not merely include lists of clients. At least some of the documents "include confidential customer-related information including customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences. This type of information is routinely given trade secret protection." Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012). See also J.T. Healy & Son, 357 Mass. at 736, 260 N.E.2d at 729 (a customer list may be a trade secret); Milso Indus. Corp. v. Nazzaro, No. 3:08CV1026 (AWT), 2012 WL 3778978, at *8 (D. Conn. Aug. 30, 2012) (customer information and financial details of costs, pricing and the like may constitute trade secrets). At least some of the documents contain information which reflects notes about products in which the customer may be interested, personal email addresses, and private cell phone numbers — information which does not appear to be generally available. See Hertz v. Luzenac Group, 576 F.3d 1103, 1115 (10th Cir. 2009) (where customer list contains non-public contact information, summary judgment should be denied). The fact that individual aspects of the "lists" may be public does not prevent the entire compilation from being a trade secret. See Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 174 (2d Cir. 1990), and cases cited.

There is evidence in the record that EMC, like Pure Storage, considered its customer information confidential, and took steps to keep it so. Similarly, there is evidence in the record that considerable effort went into developing the customer files. Nevertheless, Pure Storage

[14]

argues that EMC's use of its Salesforce data as evidence in another trial between the same parties in Delaware negates any contention that the customer information is confidential.  <u>See</u> Pure Storage Mem. (Docket No. 339) at 11-12.  Again, the significance of this disclosure is best left to the jury.  Pure Storage has not established that the same information was involved, or that the passage of time had not rendered previously protected information no longer secret.  Moreover, the trial judge in the Delaware litigation seems to have concluded that the information was, in fact, confidential, and had not been substantively disclosed at trial.  <u>See</u> Quigley Decl. at Ex. 91.  The record does not support a finding, as a matter of law, that the information is not confidential.

Contrary to Pure Storage's claim, there is evidence in the record from which a jury can find that Pure Storage knew that the former EMC employees were taking confidential and/or trade secret information, including the customer information, and that Pure Storage made affirmative use of this information.  As detailed in EMC's Opposition (Docket No. 358) at 4-5, a jury could find that "Pure's executives and managers condoned, encouraged, praised, supported, and even solicited, the misappropriation of EMC's trade secrets."  There are emails which, at this stage, indicate that Pure Storage instructed its employees to use the contact lists.  <u>Id.</u> at 26-27.  In short, the jury will have to decide the issues raised by EMC's misappropriation claims.

## V.  <u>CONCLUSION</u>

For the reasons detailed herein, Pure Storage's Motion for Partial Summary Judgment (Docket No. 329) is DENIED as to Counts I and II, and ALLOWED as to Count VII.

[15]

/ s / Judith Gail Dein
_____
Judith Gail Dein
United States Magistrate Judge