UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMC CORPORATION, ) | |
| ) | |
|     Plaintiff and Defendant-   ) | |
|     in-Counterclaim, ) | CIVIL ACTION |
| v. ) | NO. 13-12789-JGD |
| ) | |
| PURE STORAGE, INC., ) | |
| ) | |
|     Defendant and Plaintiff-   ) | |
|     in-Counterclaim. ) | |

**MEMORANDUM OF DECISION AND ORDER ON MOTION
OF PURE STORAGE INC. FOR PARTIAL
SUMMARY JUDGMENT ON AFFIRMATIVE CLAIMS**

September 7, 2016

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on the motion of Pure Storage, Inc. for partial summary judgment on its counterclaims for commercial disparagement, Lanham Act violations, and defamation. (Docket No. 325). By this motion, Pure Storage is seeking a ruling by this court that Lie # 3 in EMC's "Top Ten Lies" document is false and material and that EMC is judicially estopped from taking a contrary position. Pure Storage argues that EMC is barred by the doctrine of judicial estoppel from asserting in the present litigation that its claim that Pure Storage's deduplication is post-processed is true, because EMC allegedly took the opposite

position in litigation between the parties in Delaware. EMC denies that it has taken inconsistent positions in the two cases.[1]

This court finds that Pure Storage has failed to establish that the positions taken by EMC are directly inconsistent. Therefore, this court will not apply the doctrine of judicial estoppel and the motion for partial summary judgment is DENIED.

## II. STATEMENT OF FACTS[2]

Unless otherwise indicated, the facts relevant to the instant motion are not in dispute, and are as follows:

### The Alleged "Lie"

EMC created a document entitled "Pure's Top Ten Lies." The purpose and significance of this document is in dispute, but that issue does not need to be resolved here. At issue in the present motion is Lie #3, which reads in its entirety as follows:

> **PURE'S DEDUPLICATION IS INLINE**
>
> **FALSE.** Pure's deduplication is post processed. Pure claims 5 techniques for data reduction out of which only two – byte size pattern elimination and lightweight compression – are inline. **Everything else (including the real deduplication) is post processed.** Since this overloads Pure's single active controller, Pure cannot dedupe inline under high host load and dumps raw host data to SSDs. Pure must then use post-process dedupe to reduce this raw host data.

---

[1] EMC also contends that the truth of the statements made in its "Top Ten Lies" document is not at issue in this litigation. That issue will be addressed in this court's ruling on EMC's motion for summary judgment, and will not be addressed herein.

[2] The facts are derived from Pure Storage's Statement of Undisputed Material Facts (Docket No. 337) ("SF") and EMC's Response thereto (Docket No. 356) ("RF").

Deduplication is the process of removing redundancies from data.  (SF ¶ 7).  Data reduction techniques, such as deduplication and compression, are important because they improve performance and cost-effectiveness.  (SF ¶ 4).  The parties agree that, using techniques such as deduplication and compression "inline" can be advantageous because they reduce the amount of data that needs to be stored in long term memory.  (SF ¶ 10).[3]  Thus, as a general statement, inline deduplication may be considered more efficient, and preferable, to post-processed deduplication.

Pure Storage bases its counterclaims for commercial disparagement, Lanham Act violations and defamation on the Top Ten Lies document, including Lie #3 quoted above, asserting that the statements in the document were false and/or were made without adequate factual basis.  By its present motion, Pure Storage is seeking a ruling that EMC cannot claim that the statement "Pure's deduplication is inline" is false.

## The Delaware Litigation

The Delaware litigation was not a factor in the instant Massachusetts litigation, and did not become significant to this court until the instant summary judgment pleadings.  The facts relating to the Delaware litigation have been provided to this court in a piecemeal fashion.  Therefore, this court has only snippets of the evidence on which both parties relied in Delaware.  Similarly, the parties have not yet fully defined the issues they intend to present to the jury in the instant case.  Discovery was far reaching and covered a number of avenues

---

[3]  EMC takes the position, however, that there is no industry standard definition of what constitutes inline deduplication.  (See RF ¶ 5).

[3]

which will need to be more focused before the case goes to trial.  Therefore, the following discussion of the Delaware litigation is, by necessity, very basic and abbreviated.

On November 26, 2013, EMC sued Pure Storage for patent infringement in the United States District Court for the District of Delaware.  (SF ¶ 31).  EMC moved for summary judgment on one of its patents, arguing that the Pure "FlashArray's inline deduplication feature infringes" U.S. Patent No. 7,434,015 (the "'015 patent").  (SF ¶ 32).  The court granted EMC's motion for summary judgment on direct infringement of claims 1, 7 and 16 of the '015 patent.  (RF ¶ 35).  A jury awarded EMC $14 million.  (SF ¶ 59).[4]

Pure Storage argues that Lie #3 must be read to assert that all of "Pure's deduplication is post-processed" and that "Pure lacked inline deduplication[.]" (Pure Storage Mem. (Docket No. 336) at 1).  Pure Storage argues further that EMC's position "that Pure's deduplication is not inline, or at least was not inline until late 2015" cannot be reconciled with its position in the Delaware trial.  As Pure Storage explains:

> EMC cannot reconcile its expected "truth" defense with the story EMC told in Delaware District Court.  There, EMC accused Pure of infringing EMC patents through Pure's inline deduplication feature, which EMC stated was in "every single product, every single device that [Pure] ever sold, ever shipped, ever installed."  EMC even told the Delaware jury that Pure's inline deduplication was "key," "essential," and "mandatory" to Pure's products.  EMC's arguments prevailed, winning EMC summary judgment of infringement and a $14 million damages award.

---

[4] This court understands that a new trial has been ordered in the Delaware litigation, but not based on any of the EMC statements at issue in the instant litigation.  Therefore, the issues raised herein do not appear to be moot.

[4]

Id.  Pure Storage then provides various examples of testimony and argument in which EMC asserted that Pure Storage's products performed inline deduplication, and had done so since its first product.  (See, e.g., SF ¶¶ 38, 40, 51).

For its part, EMC argues that its position has been consistent both in this court and in the Delaware litigation.  As EMC explains:

> EMC's position here and before the Delaware court about how Pure's system accomplishes deduplication are entirely consistent (and, incidentally, entirely accurate).  EMC has not advanced "mutually exclusive" positions before either tribunal.  The Top Ten Lies document says that Pure's array performs five deduplication techniques.  It says that two of those techniques are performed inline, and it says that the rest are not performed inline (they are post-processed).  It further says that when the Pure array is under high workload, it is forced to perform more of its deduplication by post-processing rather than inline.  EMC did not argue differently in the Delaware patent case.  There, EMC simply maintained that deduplication implemented by a method (inline) claimed in the EMC patent infringes the EMC patent, and deduplication implemented by a method not claimed in the EMC patent (post processed) does not infringe the EMC patent.  Each party understands that the Pure array does both.  EMC's position has been consistent.

(EMC Opp. (Docket No. 355) at 2-3).  EMC then cites to various excerpts from testimony in the Delaware litigation to the effect that Pure Storage's deduplication techniques include some which are inline and some which are post-processed.  (See, e.g., RF ¶¶ 46, 19).

Additional facts will be provided below as appropriate.

### III.  ANALYSIS

#### A.  Judicial Estoppel

"'As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding.'"  Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir.2004) (quoting InterGen N.V. v. Grina, 344 F.3d 134,

144 (1st Cir.2003)).  The primary purpose of the doctrine "is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system."  Id. at 33.  "Consequently, the 'guiding principle of judicial estoppel' is that it should apply 'when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"  GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 520 F. Supp. 2d 213, 223 (D. Mass. 2007) (quoting Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)) (internal punctuation omitted).  Nevertheless, it is not a prerequisite for the application of the doctrine of judicial estoppel for a party to be found to have been "playing fast and loose with the courts[.]"  Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012).  Thus, a "party is not automatically excused from judicial estoppel if the earlier statement was made in good faith."  Id. (quoting Thore v. Howe, 466 F.3d 173, 184 n.5).

While "[t]he contours of the doctrine are hazy, and there is no mechanical test for determining its applicability[,]" the First Circuit has determined that, "at a minimum, two conditions must be satisfied before judicial estoppel can attach.  First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive.  Second, the responsible party must have succeeded in persuading a court to accept its prior position."  Alt. Sys. Concepts, Inc., 374 F.3d at 33 (internal citations omitted).  Additionally, "[w]hile it is not a formal element of a claim of judicial estoppel, courts frequently consider a third factor: absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage?  Relatedly, courts often inquire as to whether judicial acceptance of a party's initial position conferred a benefit on that party."  Id. (internal citation omitted).  Accordingly, "in a

prototypical case, judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.'" Id. (quoting InterGen N.V., 344 F.3d at 144).

Applying these principles to the instant case compels the conclusion that the doctrine of judicial estoppel does not apply.

### B.     The Positions Taken Are Not Apparently Inconsistent

Pure Storage's entire argument is premised on a reading of the "Lie" to mean that none of the deduplication performed by Pure Storage is performed inline. This reading ignores much of the language contained in the paragraph, including the express statement that byte size pattern elimination and lightweight compression are performed inline.[5]  It also ignores the language explaining what happens under high host load situations.  It will be up to the jury to interpret this paragraph.  While the testimony at the Delaware trial might provide fruitful grounds for cross-examination, the fact that EMC argued in Delaware that some, or even much, of the deduplication by Pure Storage is done inline is not "clearly inconsistent" with the position it has taken in this court.  See New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001).

Similarly, it appears from the information provided to this court that the only claim of patent infringement in the Delaware litigation was based on Pure Storage's inline deduplication capabilities.  There would have been no need for EMC to have put on evidence concerning

---

[5] In its Reply Memorandum, Pure Storage argues that byte size pattern elimination and lightweight compression are distinct from deduplication. (Docket No. 365 at 5-6).  While this may be true, it is not an obvious fact that this court can accept without additional evidence beyond that included in the summary judgment record.  Moreover, this argument does not address EMC's claim that the paragraph also relates to the deduplication efforts in high load situations.

those aspects of Pure Storage's products which performed post-processed deduplication. Again, Pure Storage has failed to establish the direct conflict required for this court to apply the doctrine of judicial estoppel.

### IV. CONCLUSION

For all the reasons detailed herein, Pure Storage's Motion for Partial Summary Judgment on Affirmative Claims (Docket No. 325) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge